UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MAXIMO GOMEZ,

    Plaintiff,

v.                                                                              Case No. 3:20-cv-253-J-39MCR

CAPT. LISTER, et al.,

    Defendants.

_____

**ORDER**

**I.   Status**

Plaintiff, an inmate of the Florida penal system, filed a Civil Rights Complaint (Doc. 1; Complaint) against five Defendants: Capt. Steven W. Lister, Capt. Jason Carter, Sgt. Slater Williams, Sgt. Anthony McCray, and LPN Jalenah Stormant.[1] Plaintiff alleges that Defendants McCray and Williams used excessive force on him; Defendants Carter and Lister failed to protect Plaintiff from that excessive force; and Defendant Stormant was deliberately indifferent to Plaintiff's serious medical needs prior to and following the use of excessive force. See generally Doc. 1.

Before the Court is Defendant Stormant's Motion to Dismiss (Doc. 25; Motion).[2] The Court advised Plaintiff that the granting of a motion to dismiss would be an

---

[1] Throughout his Complaint, Plaintiff identifies Defendant Stormant as "Jalena McElwain." See generally Doc. 1. However, in her Motion to Dismiss, she clarifies that her name is now "Jalenah Stormant." See Doc. 25 at 1 n.1. The **Clerk** is directed to correct Jalenah Stormant's name in the docket caption.

[2] Defendants Carter, McCray, Williams and Lister filed Answers. See Docs. 30, 45.

adjudication of the claim that could foreclose any subsequent litigation of the matter and provided Plaintiff with an opportunity to respond. See Order (Doc. 11). Plaintiff filed a response in opposition to the Motion (Doc 27; Response). Accordingly, the Motion is ripe for the Court's review.

## II.     Complaint Allegations

Plaintiff alleges that on October 8, 2017, while housed in a confinement cell at Hamilton Correctional Institution, he advised Sergeant Chamele James that he was feeling extremely depressed and had a psychological emergency. Doc. 1 at 13. Sergeant James then escorted Plaintiff to Defendant Stormant, the facility's nurse, for a mental health evaluation. Id. at 14. Plaintiff asserts that "[w]hile he was being assessed for his psychological emergency by Defendant [Stormant], [P]laintiff repeatedly told Defendant [Stormant] that he was extremely depressed and felt suicid[al] [and] that he need[ed] [] help due to the mental pain he felt." Id. According to Plaintiff, during his mental health assessment, Defendant Lister told Defendant Stormant "not to honor Plaintiff's psychological emergency []or place him in a[n] observation cell because he want[ed] to spray Plaintiff with chemical agents." Id. Plaintiff contends that Defendant Lister then contacted "Warden Anderson for authorization to use force while Plaintiff [was] still being evaluated for his psychological emergency." Id.  He states that at Defendant Lister's request, Defendant Stormant then "intentionally refuse[d] to give Plaintiff any further [] medical treatment and dishonor[ed] Plaintiff's psychological emergency as a management problem . . . ." Id. According to Plaintiff, Defendant Stormant then

2

began to mock Plaintiff, stating that chemical agents or "some hot sauce" would help Plaintiff with his psychological emergency. Id. at 14-15.

Plaintiff states that "[u]pon the completion of Defendant [Stormant's] mental health assessment, Plaintiff [] l[ie] prone on the floor outside the medical triage room," and when he began yelling that he needed help and felt suicidal, Officers Anthony Stebbins, Jeffery Taylor, Nathan Williams, and Marvin Norman carried Plaintiff back to his confinement cell. Id. at 15. According to Plaintiff, once back in his confinement cell, Defendant Lister directed Officer Norman to administer one application of chemical agents. Id. He alleges that he was then escorted to a decontamination shower and when he again began yelling that he needed help and felt suicidal, Defendant Lister ordered Officer Norman to administer a second application of chemical agents into the shower cell. Id. at 16. Plaintiff explains that Defendant Lister then ordered a third application of chemical agents; and, because Plaintiff continued to yell that he was suicidal, Defendant Carter ordered a cell extraction team to restrain Plaintiff. Id. at 17-18.

According to Plaintiff, he was preparing to submit to hand restraints at Defendant Carter's request, but instead Defendant Carter ordered the cell extraction team, which included Defendants McCray and Williams, to enter Plaintiff's shower. Id. at 18. Upon entry, Plaintiff alleges Defendant McCray hit him with a plastic shield, knocking Plaintiff to the ground, and then began punching him in the facial area. Id. Plaintiff asserts Defendant Williams also kicked Plaintiff repeatedly in the face and body. Id. Plaintiff alleges he suffered multiple abrasions to his back, a

3

swollen left ear, a facial laceration approximately 3 cm x 0.5 cm that required stiches, head trauma, contusion to left hand, permanent eye damage to left eye for which Plaintiff now requires eyeglasses to see, headaches, dizziness, and bleeding. Id. at 19-21.

According to Plaintiff, he was then taken to Defendant Stormant for a post-use-of-force evaluation. Id. at 21. He alleges that he advised Defendant Stormant that "he was in a lot of pain and felt dizziness due to his left side of head being swollen" and explained he could not see out of his left eye. Id. at 22. Plaintiff states that "[a]t this time Defendant [] Carter [told] Defendant [Stormant] not to provide Plaintiff with any more medical treatment," telling her, "[i]f he is not dying I am put[ting] him back in his cell." Id. at 22. Plaintiff states Defendant Stormant then "refuse[d] to give Plaintiff any more medical treatment, despite seeing that Plaintiff [] had suffered and was suffering from his injuries"; and he was sent back to his cell. Id. According to Plaintiff, approximately one hour after returning to his cell, Sergeant Coty Wiltgen found Plaintiff on the floor, unresponsive, and drenched in blood "due to his head injuries." Id. Plaintiff was rushed to medical and then sent to an outside hospital for treatment.

Plaintiff argues that Defendant Stormant was deliberately indifferent to his serious medical needs by intentionally and maliciously deeming Plaintiff's initial psychological emergency as a behavioral problem. Id. at 24. According to Plaintiff, he has a history of depression, anxiety, and suicidal behavior; and "[a]s a result of Defendant [Stormant's] deliberate indiffere[ce] to Plaintiff['s] [] conditions, Plaintiff

suffered further pain and mental anguish." Id. at 15, 24. He avers that if Defendant Stormant had placed Plaintiff under medical observation after her mental health assessment, he would have never been sprayed with chemical agents nor would he have suffered the physical injuries incurred during the cell extraction. Doc. 27 at 3.

He further claims Defendant Stormant was deliberately indifferent to Plaintiff's serious medical needs following the uses of force because she did not properly treat his physical injuries. Id. at 23. According to Plaintiff, Defendant Stormant did not properly treat his wounds or head trauma, thus, when he was returned to his cell, his facial laceration increased to 3 cm x 2 cm and he lost consciousness. Id. at 23. Plaintiff also alleges that Doctor Columbani asked Defendant Stormant why she allowed security to return Plaintiff to his cell with such physical injuries, and she responded by falsifying medical reports indicating she did treat him but the treated laceration reopened while he was in his cell. Doc. 27 at 5; Doc. 1 at 23. Plaintiff sues Defendant Stormant in her individual and official capacities and requests compensatory damages in the amount of $50,000 against each Defendant; punitive damages in the amount of $90,000 against each Defendant; additional compensatory damages in the amount of $38,000 against only Defendants Williams and McCray; and any additional relief that the Court deems just and proper. Id. at 6.

### III.  Defendant Stormant's Motion and Analysis

Defendant Stromant requests that the Court dismiss the claims against her because (A) Plaintiff fails to state a claim upon which relief may be granted; (B) she

is entitled to qualified immunity; and (C) she is entitled to Eleventh Amendment immunity.³ See generally Doc. 25.

### A. Failure to State a Claim

With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v.

---

³ Defendant Stormant also makes a singular, passing reference that Plaintiff failed to exhaust his administrative remedies, see Doc. 25 at 3; however, she does not present any facts or argument to support that claim.

6

Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). Moreover, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." Rehberger v. Henry Cty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (quotations and citation omitted). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against a defendant.

Plaintiff is a prisoner; thus, his claim of deliberate indifference to a serious medical need arises under the Eighth Amendment. See Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or

7

> one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson, 598 F.3d at 737 (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245)).

> In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, Farmer, 511 U.S. at 835. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott [v. Foley, 182 F.3d 1248 (11th Cir. 1999),] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor [v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)] (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

8

Farrow, 320 F.3d at 1245-46; see also Patel v. Lanier Cnty. Ga., 969 F.3d 1173, 1188-89 & n.10 (11th Cir. 2020) (recognizing "a tension within [Eleventh Circuit] precedent regarding the minimum standard for culpability under the deliberate-indifference standard," as some cases have used "more than gross negligence" while others have used "more than mere negligence"; finding, however, that it may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard" (citations omitted)).

                      i.        *Deliberate Indifference to Psychological Emergency*

Defendant Stormant does not dispute that Plaintiff's initial declaration that he was suffering from a psychological emergency constituted an objectively serious medical need, nor does she dispute that she was aware of Plaintiff's need for mental health care. See generally Doc. 25. Instead, Defendant Stormant argues that Plaintiff fails to allege that she was deliberately indifferent to Plaintiff's need for mental health care by conduct that was more than mere negligence. Id. at 4-5. She argues that Plaintiff acknowledges she completed his mental health assessment after he declared a psychological emergency and prior to the uses of force. Id. at 5 (citing Doc. 1 at 15). However, according to her, "Plaintiff appears to merely disagree with the treatment he received" and his desire for a different mode of treatment does not amount to deliberate indifference. Id. Defendant Stormant further argues that following her mental health assessment of Plaintiff, FDOC staff instructed her to not place Plaintiff in an observation cell due to ongoing security considerations, and thus,

9

any purported injury arising from no observation cell cannot be attributed to her. Id. at 6.

Taking Plaintiff's allegations as true, the Court finds Plaintiff fails to state a claim of deliberate indifference related to Defendant Stormant's response to Plaintiff's need for mental health care. In his Response, Plaintiff alleges Defendant Stormant evaluated his psychological emergency, but that he "disagree[d] with the treatment methods used by Defendant," and challenges her diagnosis that he was experiencing a "behavioral problem." Doc. 27 at 2-3. These admissions demonstrate that Plaintiff did receive some amount of mental health care, and that he is merely disagreeing with its type and quantity. See Melton v. Abston, 841 F.3d 1207, 1224 (11th Cir. 2016) ("'[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). Moreover, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Harris v. Thigpen, 941 F.2d 1495, 1507 (11th Cir. 1991) (quotation and citation omitted)); see Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." (quoting Estelle, 429 U.S. at 107)); Hamm v.

DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [the inmate] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."). Further, to the extent Plaintiff alleges that he would have never been sprayed with chemical agents nor suffered injuries from the uses of force had he been placed in an observation cell (see id. at 3), such assertions are speculative and too attenuated to support this deliberate indifference claim. As such, Defendant Stormant's Motion is due to be granted as to this Eighth Amendment claim.

        ii.      *Deliberate Indifference to Physical Injuries After Uses of Force*

Defendant Stormant also does not argue that Plaintiff presented a serious medical need following the use of chemical agents or the use of force by the cell extraction team. See generally Doc. 25. Rather, she again asserts that she was not deliberately indifferent to this serious medical need by conduct that was more than negligence. Id. at 5-6. She claims that she "treated him following the use-of-force, which included assessing him for both effects of the chemical agents and physical injuries and cleaning his wounds." Id. at 5. However, according to Defendant Stormant, "Plaintiff appears to merely disagree with the treatment he received." Id. at 5. Further, Defendant Stormant argues that "even accepting Plaintiff's allegations as true, Defendant's purported deliberate indifference arose from her observance of security-based instructions from FDOC staff." Id. at 6. Specifically, she avers that "[f]ollowing the uses-of-force, Defendant treated Plaintiff for his injuries but FDOC staff transported him to another cell." Id.

11

Plaintiff alleges he was seen by Defendant Stormant for a "post use of force evaluation," but at Defendant Carter's request, Defendant Stormant prematurely stopped the evaluation and refused medical treatment, and then she allowed Plaintiff to be sent back to his cell despite his obvious head injuries. Doc. 1 at 22. He asserts that he was later found lying on the floor of his cell, unresponsive, and drenched in blood. Id. He was then taken back to medical before being sent to an outside hospital for emergency treatment. Id. at 22-23. Plaintiff also attaches to his Complaint Defendant Stormant's "Post-Use-of-Force Exam" medical record outlining the head injuries (Doc. 1-2 at 3); however, Plaintiff argues Defendant Stormant fabricated the medical record after another doctor criticized her decision to send Plaintiff back to his cell without first treating his head injuries. Doc. 1 at 23. He further alleges that as a result of Defendant Stormant's deliberate indifference, he suffered additional dizziness, headaches, the head laceration grew in size requiring stitches, and the additional blood from the laceration made it difficult for Plaintiff to see. Id. at 23-24.

At this stage, taking Plaintiff's allegations as true, as the Court must, Plaintiff has sufficiently alleged that following the uses of force, Defendant Stormant disregarded Plaintiff's need for medical treatment by conduct that is more than negligence. Plaintiff also sufficiently alleges that he suffered additional physical injuries as a result of Defendant Stormant's alleged deliberate indifference. As such, Defendant Stormant's Motion is due to be denied as to this Eighth Amendment claim.

**B. Qualified Immunity**

Defendant Stormant argues that she is entitled to qualified immunity because she was acting within her discretionary authority and Plaintiff fails to sufficiently allege a claim against her. Therefore, according to Defendant Stormant, the individual capacity claims against her should be dismissed with prejudice.

> "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)) . . . . Once it has been determined that the official was acting within his discretionary duties, the burden shifts to the plaintiff to show (1) that the official violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). Our inquiry "can begin with either prong." Morris v. Town of Lexington, 748 F.3d 1316, 1322 (11th Cir. 2014).

Marbury v. Warden, 936 F.3d 1227, 1232-33 (11th Cir. 2019) (internal citations modified). As previously found, Plaintiff has sufficiently alleged that Defendant Stormant violated his Eighth Amendment rights by failing to provide adequate medical treatment following the uses of force. Deliberate indifference to a serious medical need of a prisoner is a violation of such rights. See Estelle, 429 U.S. at 104 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."). Accordingly, Defendant Stormant is not entitled to qualified immunity for that claim at the pleading stage.

As to Plaintiff's claim that Defendant Stormant was deliberately indifferent to his psychological emergency, this Court has found that Plaintiff has failed to sufficient state an Eighth Amendment claim. Therefore, Defendant Stormant is entitled to qualified immunity for that claim, and thus, it will be dismissed with prejudice.

**C. Eleventh Amendment Immunity**

Defendant Stormant argues that Plaintiff's claim for monetary damages against her in her official capacity should be dismissed, because she is entitled to Eleventh Amendment immunity. Doc. 25 at 8. The Court agrees that such claims are barred by the Eleventh Amendment. See, e.g., Hayes v. Sec'y, Fla. Dep't of Children & Families, 563 F. App'x 701, 703 (11th Cir. 2014) ("The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state."). As such, Defendant's Motion is due to be granted to the extent that Plaintiff requests monetary damages from Defendant Stormant in her official capacity.

Accordingly, it is

**ORDERED:**

1. Defendant Stormant's Motion to Dismiss (Doc. 25) is **GRANTED in part and DENIED in part.** The Motion is **GRANTED to the extent** Plaintiff's Eighth Amendment claim regarding his psychological emergency is **DISMISSED with prejudice**. Further, all claims for monetary damages against Defendant

14

Stormant in her official capacity only are **DISMISSED with prejudice**. The Motion (Doc. 25) is otherwise **DENIED**.

2. Defendant Stormant shall file an answer to the Complaint by **February 10, 2021**. After Defendant Stormant files her answer, the Court will set further deadlines by separate order.

3. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of January, 2021.

*[Signature]*
BRIAN J. DAVIS
United States District Judge

Jax-7

C: Maximo Gomez, #M11644
   Counsel of Record